1  Lionel Z. Glancy (Bar No. 134180)
   Peter A. Binkow (Bar No. 173848)
2  Michael Goldberg (Bar No. 188669)
   **GLANCY BINKOW & GOLDBERG LLP**
3  1801 Avenue of the Stars, Suite 311
   Los Angeles, California 90067
4  Telephone:(310) 201-9150
   Facsimile:(310) 201-9160
5  E-mail: info@glancylaw.com

6  Hollis L. Salzman (pro hac vice)
   E-mail: hsalzman@labaton.com
7  Gregory S. Asciolla (pro hac vice)
   E-mail: gasciolla@labaton.com
8  William V. Reiss (pro hac vice)
   E-mail: wreiss@labaton.com
9  **LABATON SUCHAROW LLP**
   140 Broadway
10 New York, NY 10005
   Telephone:  (212) 907-0700
11 Facsimile:  (212) 818-0477

12 *Attorneys for Plaintiff and the Proposed Class*
   *Additional Counsel Listed on Signature Page*

13

14                UNITED STATES DISTRICT COURT
15           FOR THE CENTRAL DISTRICT OF CALIFORNIA

16 BOARD OF COMMISSIONERS OF
   THE PORT OF NEW ORLEANS, on        SACV11-00437 DOC VBKx
17 behalf of itself and all others similarly
   situated,
18
                              Plaintiff,
19
        vs.
20 VIRGINIA HARBOR SERVICES, INC.
   D/B/A SEAWARD; SII, INC.; SHI, INC.;
21 FRANK MARCH; ROBERT B.            **CLASS ACTION COMPLAINT**
   TAYLOR; GERALD THERMOS;
22 WILLIAM ALAN POTTS; and
   ANDREW BARMAKIAN,
23
                              Defendants.
24
25
26
27
28

CLASS ACTION COMPLAINT

1      Plaintiff Board of Commissioners of the Port of New Orleans ("Plaintiff"),

2  on behalf of itself and all others similarly situated, brings this action for treble

3  damages and costs of suit under the antitrust laws of the United States against

4  Virginia Harbor Services, Inc. (d/b/a SEAWARD); SII, Inc. (f/k/a Seaward

5  International, Inc.); SHI, Inc. (f/k/a Seaward Holdings, Inc.); Frank March; Robert

6  B. Taylor; Gerald Thermos; William Alan Potts; and Andrew Barmakian

7  ("Defendants") and alleges, on information and belief, but on personal knowledge

8  as to allegations relating to Plaintiff, as follows:

9                            **NATURE OF CLAIM**

10      1.     This case arises from a conspiracy among Defendants and their co-

11  conspirators to fix, raise, maintain and/or stabilize prices, rig bids and allocate the

12  market and customers for plastic marine pilings and ancillary products ("Marine

13  Pilings") in the United States.

14      2.     As a result of this illegal conspiracy, Defendants charged supra-

15  competitive prices for Marine Pilings in the United States, thereby injuring

16  Plaintiff and members of the Class (defined below).

17      3.     A number of Defendants in this action have already pleaded guilty to

18  and/or settled similar claims in related actions alleging the same anticompetitive

19  conduct involving Marine Pilings.

20      4.     Defendants Virginia Harbor Services, Inc., Robert B. Taylor, William

21  Alan Potts and Andrew Barmakian have pleaded guilty to engaging in a conspiracy

22  to unlawfully rig bids and allocate the market for the sale of Marine Pilings

23  pursuant to a criminal investigation launched by the United States Department of

24  Justice's Antitrust Division ("DOJ").

25      5.     These guilty pleas have resulted in substantial fines and/or prison

26  sentences for a number of the Defendants.

27

28

6.      Additionally, on July 22, 2009, the DOJ intervened in a pending *qui tam* lawsuit brought by whistleblower Douglas Farrow, a current executive of named co-conspirator Urethane Products Corporation.

7.      The *qui tam* lawsuit, which was filed in 2005, was partially unsealed by Judge George H. Wu of the U.S. District Court of the Central District of California on February 19, 2010.

8.      On February 26, 2010, the DOJ announced that it had negotiated settlements with several of the Defendants totaling $15.4 million. Trelleborg AB ("Trelleborg"), the parent company of Defendant Virginia Harbor Services, Inc. and four of its subsidiaries, agreed to pay $14 million to settle the *qui tam* action that alleged they participated in an unlawful conspiracy to fix prices, rig bids and allocate markets for Marine Pilings, among other marine products, purchased by the U.S. Navy and other federal departments and agencies.  Defendant Frank March agreed to pay $1 million to settle the *qui tam* action, which involved Marine Pilings as well.

9.      In addition, with the DOJ's approval, Douglas Farrow, the relator in the *qui tam* action, settled with Defendant Gerald Thermos, among others, for $100,000.

10.     Also on February 26, 2010, the State of Florida announced that Defendant Virginia Harbor Services, Inc. and its predecessor, Trelleborg Engineered Products, Inc. ("TEP"), agreed to pay $707,000 to several public port authorities in Florida, including the Port of Palm Beach, to settle claims that the companies conspired to allocate business, rig bids and fix prices of marine equipment.

## JURISDICTION AND VENUE

11.     This action arises under Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 1, 15 and 26.

12.     This Court has jurisdiction under Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. §§ 1331 and 1337.

13.     Venue is proper in this District pursuant to Sections 4 and 12 of the Clayton Act, §§ 15(a) and 22, and 28 U.S.C. § 1391(b), (c) and (d).  Defendants are found and transact business in the District and/or the claims arose at least in part in the District.  Defendants regularly and continuously conduct business in interstate commerce.  The interstate trade and commerce relevant to this action has been carried out, in part, within the District.

**PARTIES**

14.     Plaintiff Board of Commissioners of the Port of New Orleans ("Port of New Orleans") is a political subdivision of the State of Louisiana created by La. R.S. 34:1 *et. seq.*, for the purposes of regulating commerce and traffic of the Port and Harbor of New Orleans.  During the Class Period (defined below), the Port of New Orleans purchased Marine Pilings directly from one or more of the Defendants and was damaged as a result of the Defendants' and their co-conspirators' unlawful conduct.

15.     Defendant SII, Inc. (f/k/a Seaward International, Inc.) ("SII") is a corporation organized under the laws of the State of Virginia, with offices located in Clear Brook, Virginia.  SII's participation in and acts in furtherance of the unlawful conspiracy resulted in foreseeable anticompetitive effects in this District and the United States.

16.     Defendant SHI, Inc. (f/k/a Seaward Holdings, Inc.) ("SHI") is a corporation organized under the laws of the State of Virginia, with offices located in Clear Brook, Virginia.  Plaintiff is informed and believes that SHI acquired SII in 1999 and that SHI dominates and controls SII.  The term "Seaward" herein refers to SHI and SII together.  Most of Seaward's assets and operations, including its Marine Pilings manufacturing operation, were acquired by TEP.  SHI's

1   participation in and acts in furtherance of the unlawful conspiracy resulted in

2   foreseeable anticompetitive effects in this District and the United States.

3       17.    Defendant Virginia Harbor Services, Inc. (d/b/a SEAWARD) is a

4   corporation organized under the laws of the State of Delaware, with its principal

5   place of business located in Clear Brook, Virginia. On or about July 25, 2007,

6   Trelleborg caused TEP to change its name to Virginia Harbor Services, Inc.

7   Unless stated otherwise, Virginia Harbor Services, Inc. and its predecessor TEP

8   shall hereafter be referred to as "VHS". VHS is a corporate subsidiary of

9   Trelleborg.

10      18.    On or about December 2002, VHS acquired most of the business

11  interests of Seaward. Selling under the "Seaward" brand, Defendant VHS is one of

12  the world's leading manufacturers and suppliers of Marine Pilings. VHS's

13  participation in and acts in furtherance of the unlawful conspiracy resulted in

14  foreseeable anticompetitive effects in this District and the United States.

15      19.    Defendant Frank March ("March") is the majority shareholder of SHI.

16  He was the majority shareholder of SII before it was acquired by SHI. March

17  actively participated in and implemented and also directed and authorized the

18  wrongful conduct, hereinafter alleged, by Seaward and VHS. In or around

19  December 2002, March authorized the sale of Seaward's operations to VHS for

20  approximately $13 million. March's participation in and acts in furtherance of the

21  unlawful conspiracy resulted in foreseeable anticompetitive effects in this District

22  and the United States.

23      20.    Defendant Robert (a/k/a "Bob") B. Taylor ("Taylor") was the

24  principal owner and operator of co-conspirator ProMar LLC ("ProMar"), a

25  manufacturer of marine products, between 1997 and 1998. In 1999, ProMar was

26  acquired by Seaward. Taylor thereafter served as President of SHI and held a

27  minority interest in SII. Around December 2002, following VHS's acquisition of

28  certain of Seaward's assets and operations, including Seaward's Marine Pilings

1   manufacturing business, Taylor was employed as the President of VHS and sat on

2   its board.  Taylor, like March, actively participated in and implemented and also

3   directed and authorized the unlawful conduct by Seaward and later VHS described

4   herein.  Defendant Taylor authorized and directed VHS to continue engaging in the

5   unlawful practices described herein after VHS acquired Seaward's operations.

6   Taylor's participation in and acts in furtherance of the unlawful conspiracy resulted

7   in foreseeable anticompetitive effects in this District and the United States

8        21.    Defendant William Alan Potts ("Potts") is the former CFO of VHS

9   and held that position during the Class Period.  Potts actively participated in and

10  implemented the unlawful conduct described herein.  Potts' participation in and

11  acts in furtherance of the unlawful conspiracy resulted in foreseeable

12  anticompetitive effects in this District and the United States.

13       22.    Defendant Gerald Thermos ("Thermos") is an individual presently

14  residing in Seal Beach, California.  Thermos is the former president of UPC and

15  now owns and operates Marine Fenders International in Wilmington, California.

16  Thermos actively participated in and implemented the unlawful conduct described

17  herein and directed and authorized the unlawful conduct by UPC.  Thermos'

18  participation in and acts in furtherance of the unlawful conspiracy resulted in

19  foreseeable anticompetitive effects in this District and the United States

20       23.    Defendant Andrew Barmakian ("Barmakian") is an individual who

21  conducts business in Rialto, California and resides in Rancho Cucamonga,

22  California.  Barmakian is the owner and president of named co-conspirator Plastic

23  Pilings, Inc.  Barmakian actively participated in and implemented the unlawful

24  conduct described herein and directed and authorized the unlawful conduct

25  engaged in by Plastic Pilings, Inc.  Barmakian's participation in and acts in

26  furtherance of the unlawful conspiracy resulted in foreseeable anticompetitive

27  effects in this District and the United States

28

## NAMED CO-CONSPIRATORS

24.    Co-conspirator Plastic Pilings, Inc. ("PPI") is a corporation organized under the laws of the State of California with offices located in Rialto, California. PPI was a leading manufacturer and supplier of Marine Pilings. PPI entered into and participated in the conspiracy to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers for Marine Pilings. Upon information and belief, PPI does not presently exist as a legal entity.

25.    Co-conspirator ProMar LLC ("ProMar") is a business entity with offices formerly located in Clearwater, Virginia, and offices formerly located in Kearneysville, West Virginia and Fort Worth, Texas. In 1999, SHI acquired ProMar. In December 2002, VHS purchased the assets of ProMar. ProMar participated in the conspiracy to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers for Marine Pilings. Upon information and belief, ProMar does not presently exist as a legal entity.

26.    Co-conspirator Urethane Products Corporation ("UPC") is a corporation organized under the laws of the State of California, with its principal place of business located in Bellflower, California. UPC manufactures, distributes and sells marine products made from polyethylene foam core with a polyurethane elastomer skin.

## UNNAMED CO-CONSPIRATORS

27.    Various other companies and individuals not named as Defendants in this Complaint participated as co-conspirators in the unlawful acts complained of, and performed acts and made statements in furtherance of the unlawful conduct.

## INTERSTATE TRADE AND COMMERCE

28.    Throughout the Class Period, there has been a continuous and uninterrupted flow of sales of Marine Pilings in interstate commerce.

## THE MARINE PILINGS INDUSTRY

29.     Marine Pilings are reinforced synthetic pilings and timbers that are used in port and pier construction projects.

30.     VHS has manufactured and sold Marine Pilings under the names Seapile, SeaTimber and SI Plastic Products, among others.

31.     During the Class Period, Seaward (subsequently VHS) and PPI were the primary manufacturers of Marine Pilings in the United States.

## THE MARINE PILINGS CONSPIRACY

32.     Beginning at least as early as January 2000, Defendants and their co-conspirators joined and participated in a continuing conspiracy in unreasonable restraint of trade to artificially raise, fix, maintain and/or stabilize prices, rig bids and allocate the market and customers for Marine Pilings in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

33.     In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain and/or stabilize the price of, rig bids and allocate the market and customers for Marine Pilings in the United States. These activities included:

(a)     Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile and electronic mail regarding the sale of Marine Pilings;

(b)     Communicating with one another to discuss the prices, customers, markets, market shares and price levels of Marine Pilings in the United States;

(c)     Agreeing during those meetings and discussions to allocate shares of the Marine Pilings market among Marine Pilings Defendants and their co-conspirators;

1          (d)     Agreeing during those meetings and discussions not to compete

2    for one another's customers by either not submitting bids to certain customers, or

3    submitting intentionally high prices or bids to certain customers;

4          (e)     Agreeing to charge prices for Marine Pilings at specified levels

5    and to allocate the market and customers and otherwise fixing, increasing,

6    maintaining and/or stabilizing the price of Marine Pilings sold to purchasers in the

7    United States;

8          (f)     Submitting bids in accordance with the agreement;

9          (g)     Selling Marine Pilings to customers in the United States and

10   elsewhere at collusive and non-competitive prices pursuant to the agreement;

11         (h)     Accepting payment for Marine Pilings to customers in the

12   United States and elsewhere at collusive and non-competitive prices pursuant to

13   the agreement;

14         (i)     Authorizing or consenting to the participation of employees

15   and/or distributors in the conspiracy; and

16         (j)     Concealing the conspiracy and conspiratorial contacts through

17   various means.

18         34.    In approximately 2000, Thermos, Seaward and PPI developed a plan

19   for the unlawful coordination of pricing and sales of PPI and Seaward's Marine

20   Pilings.  The plan originally involved the creation of a so-called "joint venture"

21   called NextWave Composites LLC ("NextWave Composites"), which would be

22   managed by Taylor, Barmakian and Thermos.

23         35.    Secret meetings were held among UPC, PPI and Seaward in

24   California around October 2000 regarding the scheme, and documents were drafted

25   describing how the operation would work.  The scheme provided that sales of

26   Marine Pilings by Defendants would go through their illegal joint venture

27   NextWave Composites, which would allocate the sales on a 50-50 basis according

28   to agreed-upon "target production ratios" for Seaward (later VHS) and PPI.

CLASS ACTION COMPLAINT                                                           8

36.    Moreover, if Seaward (later VHS) or PPI sold directly to customers, the agreement provided for the same agreed-upon pricing and target ratios to be observed.  March, the principal of Seaward, was aware of and approved the scheme.

37.    Upon information and belief, despite the joint venture, Defendants did not make any sales of Marine Pilings through NextWave Composites.

38.    Instead, before, during and after the period of NextWave Composites' existence, Defendants systematically implemented the same scheme to fix prices, rig bids and allocate the market for Marine Pilings directly with their customers according to the same terms as agreed upon in the joint venture agreement.  Both PPI, Seaward (later VHS) and their co-conspirators jointly agreed upon the price to be charged for Marine Pilings to each customer and allocated customers on a 50/50 basis to each conspirator throughout the Class Period.

39.    In or around December 2002, VHS acquired most of Seaward's assets and operations, including Seaward's Marine Pilings manufacturing business.  Upon information and belief, following the acquisition, the Nextwave Composites joint venture was dissolved.

40.    VHS joined the conspiracy following its purchase of Seaward's Marine Pilings business, and, jointly with PPI and their co-conspirators, agreed to and did in fact engage in the unlawful agreement to fix prices, rig bids and allocate the market for Marine Pilings according to the same terms throughout the remainder of the Class Period.

41.    Potts spearheaded the conspiracy on behalf of Seaward (later VHS).

42.    Thermos has had a close relationship with the owners and/or management of PPI from at least the late 1990s, particularly Barmakian (PPI's President).  UPC sold chemicals to PPI.  Moreover, even though UPC was not involved in the Marine Pilings business, Thermos included advertising for PPI's Marine Pilings on UPC's website until his departure from UPC, and Barmakian

frequently met with Thermos at UPC to discuss the operations of the respective businesses.

43.    During the Class Period, Thermos and UPC also had possession of Seaward's confidential pricing information on Marine Pilings.

44.    As a result of the illegal conspiracy, since approximately 2000, Defendants engaged in a practice of price-fixing, bid-rigging, and market allocation of Marine Pilings in the United States in furtherance of their unlawful agreement and systematically charged supra-competitive prices to purchasers of Marine Pilings.

**Criminal Pleadings to Date**

45.    A number of Defendants have pleaded guilty to participating in a conspiracy to allocate customers and rig bids for Marine Pilings in the United States in connection with a criminal investigation launched by the DOJ.

46.    On or about February 14, 2007, Taylor entered into a plea agreement with the DOJ pursuant to which Taylor agreed to "waive indictment and plead guilty to a three count criminal information charging the defendant with: (1) participating in a conspiracy to suppress and eliminate competition by allocating customers and rigging bids for contracts of foam-filled marine fenders and buoys in the United States and elsewhere from at least as early as June 2000, continuing until as late as August 2005, in violation of the Sherman Antitrust Act. 15 U.S.C. § 1; (2) participating in a conspiracy to suppress and eliminate competition by allocating customers and rigging bids for contracts of plastic marine pilings in the United States and elsewhere from at least as early as December 2000 until as late as May 2003, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (3) participating in a conspiracy to corruptly give, offer or agree to give money with the intent to influence an agent of the New York City government in connection with a series of transactions from at least as early as January 2000 until at least December 2002, in violation of 18 U.S.C. §§ 371 and 666."

47.    The plea agreement provided, upon the satisfaction of certain conditions, for the DOJ to recommend that "the Court impose a sentence requiring the defendant to pay to the United States a criminal fine of $100,000 and to serve a jail term of thirty (30) months of incarceration."  The plea was filed on May 10, 2007 in the United States District Court for the Eastern District of Virginia.  Taylor was subsequently sentenced to serve jail time for his offense.

48.    On August 3, 2007, VHS's CFO William Alan Potts entered into a plea agreement pursuant to which he agreed to plead guilty to a single count criminal information charging him with participating in a conspiracy to suppress and eliminate competition by allocating customers and rigging bids for contracts of Marine Pilings sold in the United States and elsewhere from as early as December 2002 and continuing until as late as May 2003 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  The plea was filed on September 24, 2007 in the United States District Court for the Eastern District of Virginia.  Potts was sentenced in June 2008 to pay $60,000 and serve a sentence of six months in jail.

49.    On September 30, 2008, PPI's owner and President Andrew Barmakian entered into a plea agreement with the United States pursuant to which Barmakian agreed to plead guilty to a single count criminal information charging him with participating in a conspiracy to suppress and eliminate competition by allocating customers and rigging bids for contracts of Marine Pilings from as early as December 2000 and continuing until as late as May 2003 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  The plea was filed on December 19, 2008 in the United States District Court for the Eastern District of Virginia.  Barmakian was sentenced in April 2009 to pay $75,000 and serve a sentence of one day in jail.

50.    On or about April 20, 2009, VHS entered into a plea agreement with the DOJ, pursuant to which it pleaded guilty to:  (i) participating in a conspiracy between December 2002 and August 2005 to allocate customers and rig bids for contracts of Foam-Filled Fenders and Buoys sold in the United States and

1  elsewhere; and (ii) participating in a conspiracy between December 2002 and May

2  2003 to allocate customers and rig bids for contracts of Marine Pilings.  The plea

3  was filed in the United States District Court for the Eastern District of Virginia on

4  June 15, 2009.  VHS was subsequently fined $7,500,000.

**CRIMINAL PLEADINGS IN RELATED FOAM-FILLED FENDERS AND BUOYS CONSPIRACY**

51.    In addition to their participation in the conspiracy alleged herein to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers for Marine Pilings, Defendants VHS, Taylor, Thermos and March also pleaded guilty to criminal charges in connection with their participation in a related conspiracy in the marine products industry to suppress and eliminate competition by allocating customers and rigging bids for foam-filled fenders and foam-filled buoys ("Foam-Filled Fenders and Buoys") in the United States and elsewhere.

52.    The Foam-Filled Fenders and Buoys conspiracy worked much the same way as the Marine Pilings conspiracy, particularly because it involved many of the same conspirators.  In or about 2001, UPC (Thermos) and Seaward (Taylor and March) established a similar joint venture called Nextwave Marine LLC ("NextWave Marine").  Although NextWave Marine purported to be a legitimate joint venture, in reality it was established as a vehicle to unlawfully fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers for Foam-Filled Fenders and Buoys in the United States.

53.    Defendants here planned to employ the same scheme to implement their unlawful agreement (through NextWave Composites).

**ALLEGATIONS OF ANTITRUST INJURY TO PLAINTIFFS AND THE CLASSES**

54.    Defendants' unlawful conspiracy had the following anticompetitive effects, among others:

1            (a)     prices charged to Plaintiff and the Class for Marine Pilings in

2  the United States have been fixed, raised, maintained, and/or stabilized at higher,

3  artificially-derived, non-competitive levels;

4            (b)     Plaintiff and the Class have been deprived of the benefits of

5  free, open and unrestricted competition in the sale of Marine Pilings in the United

6  States; and

7            (c)     competition in establishing prices for Marine Pilings in the

8  United States has been unlawfully restrained, suppressed and eliminated.

9      55.    By reason of Defendants' violations of Section 1 of the Sherman Act

10  and Sections 4 and 16 of the Clayton Act, Plaintiff and the Class have sustained

11  injury to their business or property.  The injury sustained by Plaintiff and the Class

12  is the payment of supra-competitive prices for Marine Pilings.  This is an injury of

13  the type that the antitrust laws were meant to punish, prevent, and redress.

14                                **CLASS ACTION ALLEGATIONS**

15      56.    Plaintiff brings this action as a class action under Rules 23(a), (b)(2)

16  and (b)(3) of the Federal Rules of Civil Procedure, on behalf of itself and all others

17  similarly situated.  The Class is defined as:

18               All persons or entities that purchased Marine Pilings in
                the United States directly from one or more of the

19               Defendants or co-conspirators from January 1, 2000
                through such time as the anticompetitive effects of the

20               Defendants' conduct ceased  (the "Class Period").
                Excluded from the Class are the Defendants, any parents,

21               subsidiaries or affiliates of the Defendants (whether or
                not named as a Defendant in this Complaint), any of the

22               Defendants' co-conspirators and federal government
                entities.

23

24      57.    The Class is so numerous that joinder of all members is impracticable.

    While the exact number of Class members is unknown to Plaintiff at this time,

25  Plaintiff believes that there are numerous members of the Class and that their

26  identities can be learned from Defendants' and their co-conspirators' books and

27  records.

28

58.     Plaintiff's claims are typical of the claims of the Class.  Plaintiff and members of the Class purchased Marine Pilings during the Class Period from Defendants or their co-conspirators at artificially maintained, non-competitive prices, established by the unlawful actions of the Defendants and their co-conspirators.  Plaintiff and members of the Class have sustained damage in that they paid inflated prices for Marine Pilings during the Class Period due to the Defendants' conduct in violation of federal law as set forth herein.

59.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and antitrust litigation.

60.     Common questions of law and fact exist as to all members of the Class which predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether Defendants conspired to raise, fix, maintain or stabilize the prices of, rig bids and allocate the market and customers for Marine Pilings in the United States;

(b)     Whether Defendants undertook actions to conceal their unlawful conspiracy; and

(c)     Whether Defendants' conduct violated the relevant U.S. federal antitrust laws and caused injury to the business and property of Plaintiffs and the members of the Class and, if so, the proper measure of damages.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of the members of the Class is impracticable.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of

1   decision as to persons similarly situated without sacrificing procedural fairness or

2   bringing about other undesirable results.

3       62.    The Class has a high degree of cohesion, and prosecution of the action

4   through representatives would be unobjectionable.  The amounts at stake for

5   members of the Class, while substantial in the aggregate, are not great enough

6   individually to enable them to maintain separate suits against Defendants.  Plaintiff

7   does not anticipate any difficulty in the management of this action as a class action.

8                          **FRAUDULENT CONCEALMENT**

9       63.    Defendants fraudulently concealed their participation in the

10  conspiracy alleged herein by, among other things, engaging in secret meetings and

11  communications in furtherance of the conspiracy, agreeing among themselves not

12  to discuss publicly or otherwise reveal the nature and substance of the acts and

13  communications in furtherance of their illegal conspiracy and by holding

14  themselves out as competitors to the public, to Plaintiff, and to the members of the

15  Class.

16      64.    Defendants engaged in various secret meetings to further the

17  objectives of the conspiracy.  For example, in or around October 2000, UPC, PPI

18  and Seaward participated in secret meetings in California to discuss the terms of

19  their agreement pursuant to which Seaward (later VHS) and PPI would jointly

20  agree on prices and divide the market for Marine Pilings on a 50-50 basis

21  according to agreed-upon "target production ratios."  These meetings, and the

22  discussions surrounding them, were not revealed to class members or to the public

23  at large.

24      65.    In approximately 2000, Defendants developed a plan for the

25  coordinated sales of PPI and Seaward's Marine Pilings through a so-called "joint

26  venture" managed by Taylor, Barmakian and Thermos.  Upon information and

27  belief, Defendants developed the plan to create a joint venture in order to conceal

28  their unlawful scheme to fix, raise, maintain and/or stabilize prices, rig bids and

1    allocate the market and customers in the United States for Marine Pilings in the
2    United States. The unlawful purpose of this joint venture was not revealed to the
3    public.

4         66.     In or about November 2002, Seaward and ProMar entered into a
5    written asset purchase agreement with VHS ("Asset Purchase Agreement"),
6    whereby they agreed to sell to VHS certain of their assets, including assets relating
7    to their Marine Pilings business. The agreement was signed by March on behalf of
8    Seaward and Taylor on behalf of ProMar. Despite the fact that both ProMar and
9    Seaward were actively engaged in the illegal conspiracy to fix, raise, maintain
10    and/or stabilize prices, rig bids and allocate the market and customers for Marine
11    Pilings in the United States, the Asset Purchase Agreement explicitly represented
12    that Seaward and ProMar had conducted their business "in accordance with all
13    applicable Laws in force in the United States (including, without limitation, those
14    relating to *antitrust* . . .)" (emphasis added). In addition, an exhibit to the Asset
15    Purchase Agreement falsely stated that Seaward "continues to face strong
16    competition in many of its markets," including Plastic Pilings.

17         67.     Defendants held themselves out as competitors to the public pursuant
18    to their unlawful agreement. For example, in 2004 Taylor communicated with
19    Plaintiff by letter regarding at least one of Plaintiff's purchases of Marine Pilings
20    from VHS, and Taylor did not reveal that VHS's bid (price) was jointly agreed
21    upon with a competitor (thus not competitive) or that Plaintiff's purchase was
22    allocated to VHS. Also, in 2000, Potts communicated with Plaintiff by letter
23    regarding another of Plaintiff's purchases of Marine Pilings from Seaward, and
24    Potts did not reveal that Seaward's bid (price) was jointly agreed upon with a
25    competitor (thus not competitive) or that Plaintiff's purchase was allocated to
26    Seaward.

27         68.     Because of the aforementioned fraudulent concealment, and the fact
28    that a price-fixing conspiracy is inherently self-concealing, Plaintiff and the

1   members of the Class could not have discovered the existence of the conspiracy

2   any earlier than public disclosures thereof.

3        69.     Plaintiff and members of the Class reasonably relied on the

4   Defendants' materially false or misleading bids and Plaintiff and members of the

5   Class were lulled into believing that Defendants' bids were the result of free and

6   open competition, rather than the product of Defendants' collusive activities.

7        70.     Because the alleged conspiracy was both self-concealing and

8   affirmatively concealed by Defendants and their co-conspirators, Plaintiff and

9   members of the Class had no knowledge of the alleged conspiracy, did not know

10  that they were paying artificially high supra-competitive prices for Marine Pilings,

11  and had no knowledge of any facts or information that would have caused a

12  reasonably diligent person to investigate whether the conspiracy existed until

13  February 21, 2007, the date the DOJ filed its criminal information against Taylor.

14       71.     At all relevant times and in all relevant respects, Plaintiff and

15  members of the Class exercised reasonable diligence.

16       72.     None of the facts or information available to Plaintiff and members of

17  the Class prior to the Notice Date, if investigated with reasonable diligence, could

18  or would have led to the discovery of the conspiracy alleged in this Complaint.

19       73.     As a result of Defendants' conduct and concealment of their

20  conspiracy, Plaintiff and members of the Class were prevented from learning of the

21  facts needed to commence suit against Defendants for the anticompetitive conduct

22  alleged in this Complaint until the Notice Date.

23       74.     Because of Defendants' active steps, including fraudulent

24  concealment of their conspiracy, to prevent Plaintiff and members of the Class

25  from suing them for the anticompetitive activities alleged in this Complaint,

26  Defendants are equitably estopped from asserting that any otherwise applicable

27  limitations period has run.

28

75.    The running of any applicable statute of limitations has been equitably tolled as to any claims of Plaintiff and members of the Class as a result of the anticompetitive conduct alleged in this Complaint.

## CLAIM FOR RELIEF

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT

76.    Plaintiff incorporates by reference the preceding allegations.

77.    Defendants and their named and unnamed co-conspirators entered into and engaged in a conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act.

78.    The conspiracy consisted of a continuing agreement, understanding or concerted action between and among the Defendants and their co-conspirators in furtherance of which the Defendants fixed prices, rigged bids and allocated the market and customers for Marine Pilings in the United States.  Defendants' conspiracy is a *per se* violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

79.    Defendants' conspiracy, and resulting impact on the market in the United States for Marine Pilings, occurred in or affected interstate commerce.

80.    As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have suffered injury in that they have paid supra-competitive prices for Marine Pilings in the United States during the Class Period.

## **RELIEF SOUGHT**

Accordingly, Plaintiff demands relief as follows:

A.    That the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff Port of New Orleans be appointed as class representative for the Class;

1       B.    That the unlawful conspiracy alleged be adjudged and decreed to be

2  an unreasonable restraint of trade or commerce, in violation of Section 1 of the

3  Sherman Act;

4       C.    That Defendants, their subsidiaries, affiliates, successors, transferees,

5  assignees and the respective officers, directors, partners, agents, and employees

6  and all other persons acting or claiming to act on their behalf, be permanently

7  enjoined and restrained from continuing and maintaining the conspiracies alleged

8  in this Complaint;

9       D.    That Plaintiff and the Class recover the damages determined to have

10  been sustained as to each of them, trebled as provided by law, and that judgment be

11  entered against Defendants, jointly and severally, on behalf of Plaintiff and each

12  and every member of the Class;

13       E.    That Plaintiff and the Class recover their costs of the suit, including

14  attorneys' fees, as provided by law; and

15       F.    That the Court direct such further relief it may deem just and proper.

16                 **DEMAND FOR JURY TRIAL**

17       Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs

18  demand a jury trial as to all issues triable by a jury.

19  Dated:  March 17, 2011          Respectfully submitted,

20                    By:

21                    Michael Goldberg (Bar No. 188669)
Lionel Z. Glancy (Bar No. 134180)

22                    **GLANCY BINKOW & GOLDBERG LLP**

23                    1801 Ave. of the Stars , Suite 311
Los Angeles, CA 90067

24                    Telephone: (310) 201-9150
Facsimile: (310) 201-9160

25                    info@glancylaw.com

26                    Hollis L. Salzman
hsalzman@labaton.com

27                    Gregory S. Asciolla
gasciolla@labaton.com
William V. Reiss

28                    wreiss@labaton.com
**LABATON SUCHAROW LLP**

140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Interim Class Counsel, Chair of the Executive Committee*

J. Burton LeBlanc
bleblanc@baronbudd.com
Bruce Steckler
bsteckler@baronbudd.com
Melissa Hutts
mhutts@baronbudd.com
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

Brian P. Murray
bmurray@murrayfrank.com
Lee Albert
lalbert@murrayfrank.com
Benjamin D. Bianco
bbianco@murrayfrank.com
**MURRAY, FRANK & SAILER LLP**
275 Madison Avenue
New York, NY 10016
Telephone:  (212) 682-1818
Facsimile:  (212) 682-1892

Charles E. Tompkins
ctompkins@shulaw.com
Todd S. Heyman
theyman@shulaw.com
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Gregory P. Hansel
ghansel@preti.com
Randall B. Weill
rweill@preti.com
**PRETI FLAHERTY BELIVEAU
   & PACHIOS LLP**
P.O. Box 9546
One City Center
Portland, ME 04112-9546
Telephone: (207) 791-3000
Facsimile: (207) 791-3111

Eugene A. Spector
espector@srkw-law.com
William G. Caldes
bcaldes@srkw-law.com
Jeffrey L. Spector
jspector@srkw-law.com
**SPECTOR, ROSEMAN, KODROFF
& WILLIS PC**
1101 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004
Telephone: (202) 756-3600
Facsimile:  (202) 756-360

*Additional Plaintiff's Counsel*

**Of Counsel:**

Gerald O. Gussoni, Jr.
gussonib@portno.com
Jeffery M. Lynch
lynchj@portno.com
Joseph W. Fritz, Jr.
fritzj@portno.com
Diana T. A. Hale
haled@portno.com
1350 Port of New Orleans Place
New Orleans, LA  70130
Telephone: (504) 528-3228
Facsimile: (504) 528-3209

*Additional Counsel for Plaintiff
Board of Commissioners of
The Port of New Orleans*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## SACV11- 437 DOC (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [X] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Michael Goldberg (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, On Behalf of Itself and All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>VIRGINIA HARBOR SERVICES, INC. D/B/A SEAWARD,<br>[See Attachment for Additional Defendants]<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV11-00437 DOC VBKx<br><br><br>SUMMONS |

TO:   DEFENDANT(S): THE ABOVE-NAMED DEFENDANTS

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Michael Goldberg _____, whose address is 1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

CHRISTOPHER POWERS

Dated: MAR 1 7 2011

By: _____
Deputy Clerk

(Seal of the Court)

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Michael Goldberg (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, On Behalf of Itself and All Others Similarly Situated, <br><br> PLAINTIFF(S) <br> v. <br><br> VIRGINIA HARBOR SERVICES, INC. D/B/A SEAWARD, <br> [See Attachment for Additional Defendants] <br> DEFENDANT(S). | CASE NUMBER <br><br> SACV11-00437 DOC VBKx <br><br> SUMMONS |

TO:   DEFENDANT(S): <u>THE ABOVE-NAMED DEFENDANTS</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Michael Goldberg</u>, whose address is <u>1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __MAR 1 7 2011__

By: _____
**CHRISTOPHER POWERS**

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## ATTACHMENT TO SUMMONS

ADDITIONAL DEFENDANTS:


SII, INC.; SHI, INC.; FRANK MARCH; ROBERT B. TAYLOR; URETHANE
PRODUCTS CORPORATION; GERALD THERMOS; AND ANDREW
BARMAKIAN.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, on Behalf of Itself and All Others Similarly Situated | DEFENDANTS<br><br>See attached. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Michael Goldberg (#188669) - Glancy Binkow & Goldberg LLP<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067     Telephone: (310) 201-9150 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No      ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. Sections 1 and 15

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance |  | PERSONAL PROPERTY | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☑ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 370 Other Fraud |  | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty |  |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations |  | ☐ 340 Marine |  | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service |  | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment |  | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise |  | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions |  |  | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land |  |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
|  | ☐ 245 Tort Product Liability |  |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |
|  | ☐ 290 All Other Real Property |  |  |  |  |

# SACV11-00437

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No   ☑ Yes
If yes, list case number(s): Consolidated Case 2:10-cv-02319-GW-FFMx

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
          ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
          ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
          ☐ D.  Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| See attached. | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| See attached. | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles<br>Orange | Throughout the United States |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_     Date 3/17/2011

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# CIVIL COVER SHEET ATTACHMENT

## I (a) - Defendants

VIRGINIA HARBOR SERVICES, INC. D/B/A SEAWARD; SII, INC.; SHI, INC.; FRANK MARCH; ROBERT B. TAYLOR; URETHANE PRODUCTS CORPORATION; GERALD THERMOS; AND ANDREW BARMAKIAN.

## IX.  Venue - Section B

List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

| County in this District: | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| **Los Angeles** Urethane Products Corporation; Andrew Barmakian)<br><br>**Orange** (Gerald Thermos) | **Virginia** (Virginia Harbor Services, Inc. d/b/a SEAWARD; Seaward; SII, Inc.; SHI, Inc.; Robert B. Taylor)<br><br>**Tennessee** (Frank March) |